IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SANDRA PERKINS, PATRICIA BERES, JAYME EEMAN, and CYNTHIA JOHNSON-LANOHA, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| V. | ) ) ) |
| THE FUNNY BONE COMEDY CLUB OF OMAHA, INC., | ) ) ) ) |
| Defendant. | ) |

CASE NO. 8:06CV44

MEMORANDUM AND ORDER

This matter is before the Court on a Motion for Summary Judgment filed by the Defendant, The Funny Bone Comedy Club of Omaha, Inc., (hereafter "The Funny Bone") (Filing No. 96). The Funny Bone seeks summary judgment on all claims brought against it by its former employees, Plaintiffs, Sandra Perkins, Patricia Beres, Jayme Eeman and Cynthia Johnson-Lanoha. In their Complaint, the Plaintiffs alleged that The Funny Bone discriminated against them because of their age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621-34, (hereafter the "ADEA"), and in violation of the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48 -1101 et seq.[1] The matter has been fully briefed, and evidence has been offered in support of and in opposition to the motion. For the reasons that follow, the motion will be denied in all respects.

**Factual Background**

The Funny Bone has operated two comedy clubs in the Omaha, Nebraska, area featuring live entertainment by local and national comedians. On April 26, 2004, The

---

[1] The state law claim is not specifically discussed because it is subsumed within the federal law claim. *See eg., Billingsley v. BFM Liquor Management, Inc.*, 645 N.W.2d 791, 803 (Neb. 2002)(quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

Funny Bone closed the club it had successfully operated at 114th Street in Omaha, Nebraska (hereafter the "114th Street" club).  A few months later, on August 12, 2004, The Funny Bone opened a new club at the Village Pointe Shopping Center.  Colleen Quinn has been employed by The Funny Bone in various capacities since 1990, most recently as general manager for the clubs.   (Quinn Dep. 8:8;10:18-21).  She is 57 years old.

In addition to offering live comedy entertainment, the 114th Street club also provided a full-service bar and an appetizer menu for its customers.  The wait staff wrote food orders on paper pads and called drink orders to the bartenders, a system referred to in the Defendant's brief as "80's technology."  When the 114th Street club closed, Plaintiffs Perkins, Beres, and Eeman were discharged from their employment as waitresses with the Defendant.  Plaintiff Johnson-Lanoha retained her employment with the Defendant, though her responsibilities changed from being the assistant manager[2] at the 114th Street club to the bar manager at the Village Pointe club.

Johnson-Lanoha was employed as the bar manager at the Village Point club until the time of her resignation.  Another employee of the 114th Street Club, Stacey Hart, also retained her employment with The Funny Bone at the Village Point club.  Hart was retained to run the ticket booth, the same position she had held at the 114th Street club.  Hart held that position until  the end of September or beginning of October 2004, when the decision was made to promote her to operations manager.

Like the 114th Street club, the Village Point club also brought in local and national comedians and offered a full-service bar to its customers.  The Village Pointe club also

---

[2] Witnesses also refer to her role as "night manager."

offers a full-service restaurant, which was not available at the 114th Street club. (Kutash Dep. 23:7). The Village Point club uses a Point of Sale ("POS") computer system for food and beverage sales. The POS system requires the wait staff to enter all orders on a computer. The orders are then displayed on a computer screen for use by the bartenders and kitchen staff. Mitch Kutash, the Defendant's majority shareholder, stated that the Village Pointe club needed this modern technology to compete in the restaurant market in Omaha. (Kutash Dep. 45:3-21).

In addition to Kutash, The Funny Bone's current shareholders include Todd Leinenbach, Robert Harman, Luke Pridgeon, Colleen Quinn and Don Fiedler. (Kutash Dep. 10:21-24). In his role as the main operating partner in 2004,[3] Leinenbach was responsible for overseeing the new construction of the Village Pointe club and assembling the team to assist in the club's opening. (Leinenbach Dep. 12:23-14:8; Kutash Dep. 14:21-16:10). Luke Pridgeon was part of that team, and he conducted several interviews on August 3 and 4 to fill wait staff and bartender positions. (Kutash Dep. 16:16-24).

In response to an advertisement published in the Omaha World Herald in July 2004, Perkins, Beres, and Eeman applied for employment as wait staff with the Village Pointe club. At the time of the applications, they were ages 41, 41, and 43, respectively. Leinenbach asked Quinn to call the applicants for the positions and schedule the times for interviews during the first week of August 2004. Quinn called between 120 to 140 applicants. (Quinn Dep. 31:5-24). According to the Defendant, Pridgeon conducted interviews for either two or three days from August 3-5, 2004. Quinn was present during

---

[3] Leinenbach did not become a shareholder until January 1, 2006. (Kutash Dep. 15:2-16:2).

some, but not all, of the interviews. (Pridgeon Dep. at 12:2-25; Quinn Dep 34:6-10). Quinn also conducted interviews of applicants for wait staff positions in the July and August 2004 time frame, but she denies being involved with the decisions that were made relative to the Plaintiffs. (Quinn Dep 30:25-31:1).

Beres and Eeman testified that they were not called for interviews. Perkins, however, received a call from Quinn around 1:30 p.m. on the last day Pridgeon was interviewing, and Quinn scheduled Perkins' interview for later that day. Perkins had to make last minute arrangements to take time from her day job to interview. (Perkins Dep. at 48:6-49:4).

Perkins was interviewed by Pridgeon. Perkins's and Pridgeon's accounts of the interview differ slightly.[4] Perkins states that the interview began with Pridgeon sifting through a stack of applications. Perkins stated that when Pridgeon could not locate her application in that stack, he asked her whether she had been employed at the 114th Street club. When Perkins responded affirmatively, Pridgeon directed his attention to a different group of applications that were located on the far left side of the table and pulled her application out of the separated stack. Perkins has testified that Pridgeon then stated that Quinn had separated applications submitted by former employees of the 114th Street club from all other applications, and that she had placed the former employees' applications in a separate stack on Pridgeon's work area. Pridgeon denies making the statement. (*Compare* Perkins Dep. 37:18-38:6; 46:2-11 *with* Pridgeon Dep. 28:2-10). Quinn denies

---

[4] Perkins and Pridgeon agree that they discussed their shared interests in the state of Virginia and at least some of Perkins' previous employment experience.

that she separated the former employees' applications from the other applications. (Quinn Dep. 34:14-21).

Pridgeon stated that Perkins began the interview by telling him that she had retained an attorney, and she wanted to know why she had to re-apply for her job, statements that he characterized as "combative" and "odd". (Pridgeon Dep. 25:12-13). Pridgeon stated that he was looking for "motivated, experienced [and] pleasant" individuals for the server positions at the Funny Bone at Village Pointe. (Pridgeon Depo. 13:11). Pridgeon decided not to hire Perkins. His stated reason for not hiring Perkins was that the beginning of her interview had thrown him off, and he did not believe she would give customers the level of service and cheery disposition that Funny Bone wanted to project. (Pridgeon Dep. 28:25-29:17). Pridgeon stated that he may have talked to Quinn and Leinenbach regarding former employees, and that he knew at the time he interviewed Perkins that she had worked at the 114th Street club. (Pridgeon Dep. 13:1-12; 29:18-21; 34:12-21).

Johnson-Lanoha was not interviewed because she was offered employment at the Village Pointe club before the 114th Street club closed.

## Summary Judgment Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis

5

for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The burden then shifts to the opposing party to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327. Nevertheless, "[s]ummary judgment should seldom be granted in employment discrimination cases because intent is often the central issue and claims are often based on inference." *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004).

**Analysis**

The ADEA provides: "It shall be unlawful for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In a disparate treatment case, liability depends on whether age actually motivated the employer's decision. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000); *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993). To succeed on a disparate treatment claim, the plaintiff must show the employee's age "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Reeves*, 530

U.S. at 141 (quoting *Hazen Paper*, 507 U.S. at 610).  The United States Court of Appeals for the Eighth Circuit has stated that "the ADEA 'requires the employer to ignore an employee's age' in making employment decisions." *E.E.O.C. v. City of Independence*, 471 F.3d 891, 896 (8th Cir. 2006) (quoting *Hazen Paper*, 507 U.S. at 612).

Age discrimination in employment can be shown with either direct or circumstantial evidence of age discrimination.  "Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Quick v. Wal-Mart Stores, Inc.,* 441 F.3d 606, 609 (8th Cir. 2006) (quoting *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir.2004)). *See also EEOC v. Liberal R -II School Dist.*, 314 F.3d 920, 923 (8th Cir. 2002) (direct evidence may include evidence of actions or remarks of the employer that reflect a discriminatory attitude); *Kneibert v. Thomson Newspapers, Mich. Inc.,* 129 F.3d 444, 452-53 (8th Cir. 1997) (holding that a decision-maker's statement to a terminated editor that he "had no use for a senior editor" but rather needed "three young editors" constituted direct evidence of age discrimination and reversing the district court's summary judgment in favor of the employer on that claim.)

When an employee presents direct evidence that an unlawful consideration such as age "played a motivating part in [the] employment decision," then the standards set out in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258 (1989) govern the legal analysis.  In such cases, "if the plaintiff produces direct evidence that an illegitimate criterion, such as gender, 'played a motivating part in [the] employment decision,' " then "the burden shifts

to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination." *Carrington v. City of Des Moines*, 2007 WL 1029329 at 5 (8th Cir. 2007)(quoting *Cronquist v. City of Minneapolis*, 237 F.3d 920, 924 (8th Cir.2001) (alteration in original)). *Price Waterhouse* was "superseded in part by the Civil Rights Act of 1991," so that "a Title VII plaintiff who shows that an impermissible factor motivated an adverse employment action could receive some relief . . . even if the employer were to prevail on its dual motive defense." *Id.* (quoting *Norbeck v. Basin Elec. Power Coop.*, 215 F.3d 848, 852 (8th Cir. 2000). In *Slathar v. Sather Trucking Corp.*, 78 F.3d 415, 418-19 (8th Cir. 1996), the Eighth Circuit Court held that "[a]ge discrimination may exist when an employer terminates an employee based on a factor such as experience or salary when the employer presupposes a correlation with age and uses that factor as a proxy for age."

When a plaintiff has no direct evidence of age discrimination, then courts apply the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). In the first step, the plaintiff must establish a prima facie case of age discrimination by showing (1) she was at least 40 years old, (2) there was some adverse employment action, (3) she was meeting her employer's reasonable expectations at the time of the adverse employment action, and (4) she was replaced by someone substantially younger. *See Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1196 (8th Cir. 2006)(citing *Haas v. Kelly Serv. Inc.,* 409 F.3d 1030, 1035 (8th Cir. 2005)); *Reeves,* 530 U.S. at 141. If a plaintiff can establish a prima facie case, then a rebuttable presumption of unlawful discrimination is created. *Kneibert*, 129 F.3d at 452. In the

8

second step, the defendant must rebut a plaintiff's prima facie case by producing evidence of a legitimate, nondiscriminatory reason for taking the adverse employment action. *Reeves,* 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993)(noting that the burden is one of production, not persuasion, and can not involve a credibility assessment)). Assuming the defendant satisfies its burden, then presumption of unlawful discrimination disappears, and the plaintiff is obliged to show defendant's reason for termination is a pretext for intentional age discrimination. *Kneibert*, 129 F.3d at 452.

The Plaintiffs maintain that they have direct evidence of unlawful age discrimination to support their claims. For example, the Plaintiffs point to:

1. Quinn's statement, which she acknowledges making, that she intended to hire only "cute 20 year olds with perky breasts and nice butts because that's what people want to see." (Quinn Dep. 14:8-22; Johnson-Lanoha Dep. 45:2-46:14).

2. Quinn's statements, which she does not recall making but does not deny making, that:

    a. maybe younger kids would come to the club "if we did not have a bunch of old moms for waitresses," (Johnson-Lanoha Dep. 45:2-46:14; Quinn Dep. 22:11-22);

    b. that Mitch Kutash said he was not going to hire any of the old wait staff who had sagging breasts, (Johnson-Lanoha Dep. at 91:7-19); and

9

      c.    "I don't know why you old bitches think I'm going to hire you back," which she made in Perkins's presence, (Quinn Dep 15:23-16:167; Perkins Dep. 25:21-29:12).

    3.    Todd Leinenbach's statement that the opening of the new club would present a good opportunity to get rid of all of the "old employees" that they did not want anymore.  (Johnson-Lanoha Dep at 46:1-6)

The Funny Bone denies that some of these statements were made, suggests that some of these comments were made only in jest, and argues that, regardless of the speaker's intent, the comments should be construed either as 1) "stray comments" made by someone other than a decisionmaker; or 2) "stray comments" that were not made in the decisional process.  Defendant argues that these "stray comments" comments are insufficient to overcome its properly supported summary judgment motion.

**Price Waterhouse Analysis of Wait Staff Plaintiffs' Claims**

The comments allegedly made by Quinn and Leinenbach included direct references to age and age-related physical characteristics.  Observing the obvious, the Court finds that references to "old moms" and "old bitches" are undeniably age-related comments; the comment about getting rid of the "old employees" could have been intended to mean "aging" employees at the 114th Street club or it could refer to "former" employees.  And, while "perky breasts" and "small butts" are not exclusively descriptive of younger persons, in the context of this case it is fair to presume that Quinn saw a correlation between the physical attributes that she mentioned and youth.  Conversely, it is fair to presume that the alleged reference to "sagging breasts" correlated to that physical attribute found most often in persons who are aging.

Whether these comments constitute direct evidence of age discrimination against Perkins, Eeman and Beres primarily turns on whether Quinn and Leinenbach had any material input in the decision to hire the wait staff for the Village Pointe club. Because I find that there are genuine issues of material fact regarding whether the people who made these comments or allegedly made these comments were decision makers or had material influence upon the decisions not to rehire Perkins, Eeman and Beres, I will deny the Defendant's motion for summary judgment with regard to those Plaintiffs. The genuineness of the issue regarding the identity of the decisionmaker(s) is demonstrated by the evidence that: 1) Quinn was in a position to exclude applicants from interviews, and being hired, because she made the phone calls to schedule interviews for Pridgeon; 2) Perkins testified in her deposition that Pridgeon told her that Quinn separated the applications of former employees from other applicants for Pridgeon's reference during the interviews; 3) Pridgeon acknowledged that he may have received input from Quinn about the suitability of the former 114th Street club employees as candidates for the Village Pointe wait staff; 4) Quinn does not deny making the age-related comments though she does not recall making some of them; 5) both Kutash and Leinenbach because of their positions – Leinenbach as managing partner and Kutash as majority shareholder – possessed the authority to influence hiring decisions.

The Funny Bone contends that regardless of who made the comments, they should be considered stray comments because they were not made in connection with the hiring process. Without knowing whether Quinn and Leinenbach materially influenced the hiring decisions, the Court cannot characterize the comments as "mere stray remarks" in the workplace "unrelated to the decisional process itself." *See Price Waterhouse v. Hopkins,*

11

490 U.S. 228, 277 (1989) (O'Connor, J., concurring).  In addition, The Funny Bone argues the comments should be considered unrelated to the decisional process because they are remote in time; having been uttered several months before the hirings decisions for the Village Pointe club were made.

The Defendant relies on *Twymon v. Wells Fargo & Co.*, 462 F.3d 925,  934 (8th Cir. 2006).  In that case, the Eighth Circuit Court determined, in the context of a race discrimination case, that a decisionmaker's apparent acceptance of a descriptive reference to "Uncle Tom," "while racially offensive and misguided, [was] apparently made in the context of attempting to preserve and promote [plaintiff's] career at Wells Fargo, not in relation to deciding to terminate [her]."  *Id.*  Because the "Uncle Tom" remark was not made in connection with the decision to terminate the plaintiff's employment, the Eighth Circuit Court found these remarks to be stray comments, citing *Saulsberry v. St. Mary's Univ. of Minn.,* 318 F.3d 862, 867-68 (8th Cir. 2003) (noting that "an isolated, stray comment unrelated to the decisional process" is not direct evidence of discrimination, even if made by a decisionmaker.") The comments allegedly made by Quinn and Leinenbach were not made in an attempt to counsel the Plaintiffs or to preserve or to promote their careers with The Funny Bone.  Quinn's and Leinenbach's alleged comments were specifically related to the hiring decisions that would be made for the Village Pointe club and set forth criteria that would be considered in the hiring decisions.  For all these reasons, I conclude that the stray-comments line of cases does not advance the Defendant's summary judgment motion.  Because there are genuine issues as to material facts, the Court denies the Defendant's summary judgment relative to the claims raised by

12

Perkins, Beres, and Eeman.  See *E.E.O.C. v. City of Independence, Mo.*, 471 F.3d at 894 - 896.

**Alternatively, McDonnell Douglas Analysis of Wait Staff Plaintiffs' Claims**

Even if the Court were to assume that Quinn and Leinenbach were not decision makers and that this is not a direct evidence case, the Court concludes there is sufficient evidence of age discrimination to create a genuine issue of material fact relative to whether the Defendant's stated reasons for refusing to hire Perkins, Beres and Eeman were simply a pretext for age discrimination.  Perkins, Beres, and Eeman, each one and all of them, have produced evidence sufficient to state a prima facie case of age discrimination.  They were all older than 40 years at the time the decision was made by the Defendant not to rehire them to work at the Village Pointe club.  Beres had been employed by the Defendants at the 114th Street club for 12 years; Eeman for 10 years, and Perkins for 4 to 6 years. (Quinn Dep. 29:12-13).   There is no evidence that they were not performing their jobs satisfactorily; the record contains no criticism of their work.  Each one and all of them applied for wait staff positions at the Village Pointe club and were not hired.  The oldest wait staff employee hired to work at the Village Pointe club from August 2004 through February 2005 was 28 years old, to the best of Plaintiffs' knowledge based on the discovery provided by the Defendant.  (Filing No. 103, Ex. 23).

The Defendant's stated reason for not hiring Beres and Eeman is that they did not present themselves for interviews.  They did not have an interview because Quinn did not contact them. (Beres Dep. 55:19-56:8; Eeman Dep. 29:10-31:10).  Quinn testified that it was not her intention to exclude Beres and Eeman.  Inadvertent mistake is a legitimate, non-discriminatory reason for an employment action.  Accepting that reason as true without

delving into credibility issues, the burden shifts back to Plaintiffs Eeman and Beres to present evidence to show that the Defendant's stated reason for not hiring them is only a pretext for age discrimination.

Eeman and Beres point to the discriminatory comments made by Quinn to show evidence of discriminatory animus based on their age. The undisputed fact that Quinn arranged the interview schedule and the evidence of her discriminatory comments is sufficient to raise a genuine issue of material fact relative to pretext. The comments attributed to Quinn could be viewed as demonstrating a bias against the older employees, and there is no dispute that Quinn was in a position to cut Beres and Eeman from consideration by failing contact them and schedule their interviews.

The Defendant's stated reason for not hiring Perkins is that she was not sufficiently cheery and he did not believe that Perkins would not provide the level of customer service he was looking for based primarily upon her interview. That is a legitimate non-discriminatory reason that shifts the burden back to Perkins to show some evidence of pretext. Perkins also relies on the age-related comments by Quinn and Leinenbach. Quinn made discriminatory comments based on age in Perkins's presence, and there is evidence that a younger applicant who was ultimately hired was positively described on her application as "Sandy Perkins-ish" – a positive reference. In addition, the Plaintiffs have produced anecdotal evidence showing that the Funny Bone did not hire any wait staff employees over the age of 28 to work at the Village Pointe club for the first six months that it was open. All this evidence, when considered together, is sufficient to show that a genuine issue of material fact relative to whether Pridgeon's stated reason for not hiring Perkins was simply a pretext for not hiring her because of her age.

**McDonnell Douglas Analysis of Failure to Promote Claim**

Johnson-Lanoha's claim is that the Funny Bone denied her a promotion to operations manager because of her age. The direct evidence relied upon by the wait staff Plaintiffs in opposition to the motion does little to substantiate Johnson-Lanoha's claim that she was not promoted based on her age. Much of the evidence of age-related animus relates to applicants for wait staff positions at the new club, not to management positions. Because Johnson-Lanoha retained her employment with The Funny Bone, I conclude that the evidence about hiring wait staff personnel does not constitute direct evidence of discrimination against her. Johnson-Lanoha has acknowledged that she understood Quinn's comments were not directed at her. (Johnson-Lanoha Dep. 46:19-21).

Because she can point to no direct evidence of age discrimination to support her failure to promote claim, the Court will consider Johnson-Lanoha's claim under the *McDonnell Douglas* framework. In addition to showing that she is a member of the protected class, Johnson-Lanoha must show that she was qualified for the promotion she sought; she was not promoted, and that the Funny Bone filled the position with a person sufficiently younger to permit an inference of age discrimination. *Peterson v. Scott County,* 406 F.3d 515, 523 (8th Cir. 2005). Johnson-Lanoha has produced evidence to demonstrate a prima facie case: she was more than 40 years old at the time Stacey Hart was promoted to operations manager for the Village Pointe club; she was under consideration for the promotion and did not receive it, and that the person who received the promotion, 28-year-old Hart, was sufficiently younger than Johnson-Lanoha to raise an inference of age discrimination. The more difficult issue is whether Johnson-Lanoha has shown that she was qualified for the promotion.

There is no dispute that Johnson-Lanoha had performed satisfactorily as the assistant manager of the 114th Street club, where her duties included ordering liquor, scheduling the wait staff and bartenders, counting and depositing money, and closing up and locking the club. (Johnson-Lanoha Dep. at 92:25-93:9). Leinenbach acknowledges that the promotional decision was between Johnson-Lanoha and Hart. (Leinenbach Dep. 22:5-11). Because the burden at this stage is not onerous, the Court finds that Johnson-Lanoha has provided sufficient proof to show that she was qualified for the promotion and, with that, has presented a prima facie case of failure to promote based on age.

In response to the presumption of age discrimination created by the prima facie case, the burden shifts to The Funny Bone to articulate a legitimate, nondiscriminatory reason for its selection of Hart over Johnson-Lanoha for the operations manager. The burden is one of production. Leinenbach, in consultation with Quinn and Kutash, made the decision to promote Hart. Leinenbach testified that Hart was given the operations manager position for several reasons, including her knowledge of and previous experience working with POS systems, her aptitude for learning new jobs at the Village Pointe club, and her enthusiastic attitude. (Leinenbach Dep. 21:12-22:4; 23:11-25). The undisputed evidence also indicates that Johnson-Lanoha has stated that she had no previous history working with a POS system, and that she had some difficulty immediately learning the POS system. The Court finds that The Funny Bone has satisfied its burden under step two.

The burden shifts back to the plaintiff to show pretext, as more fully explained by the Eighth Circuit Court below:

> [The Plaintiff] "can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision."
>
> \* \* \*
>
> "It is not enough, in other words, to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." . . . "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."

*Mayer v. Nextel West Corp.*, 318 F.3d 803, 807-808 (8th Cir. 2003) citations omitted.

Thus, to survive the Defendant's motion for summary judgment, Johnson-Lanoha must come forward with some evidence that The Funny Bone's stated reason for giving the promotion to Hart is a pretext for age discrimination. Johnson-Lanoha asserts that Defendant's stated reason is not believable because the Defendant provided Hart with every training opportunity she requested, including a trip with Quinn to another Funny Bone club in Richmond, Virginia, before the Village Pointe club opened. There is evidence that Quinn planned the trip with Hart who also arranged for Kutash's approval. On the trip, Hart trained on the ticketing system called Synfonee, and Quinn received management training. When Johnson-Lanoha requested additional training, her request was denied. Leinenbach stated that the only training that Johnson-Lanoha needed was training on the POS system, and all of that training was conducted in the Village Pointe club itself. (Leinenbach Dep. 26:16-28:24). While Johnson-Lanoha was not identically situated to Hart because Hart had to learn the Synfonee system, Johnson-Lanoha was similarly situated to Hart and Quinn in that they were to hold management positions at the new club, and she was the only one denied additional training.

17

To show that age was a determinative factor in the Defendant's decision to give Hart the promotion, Johnson-Lanoha relies upon the facially discriminatory comments made by Quinn, and allegedly made by Leinenbach and Kutash, as evidence of a general discriminatory attitude against older employees working at the Village Pointe club. Depending on what testimony is found credible, Leinenbach, Kutash or Quinn, or all of them, may have had material input into the decision to promote Hart over Johnson-Lanoha. For example, Leinenbach's described the operations manager as "Colleen's right-hand person," and he stated that the promotion was "Mitch's final decision." (Leinenbach Dep. 15-22).

"On summary judgment the plaintiff need only present evidence sufficient to raise genuine doubt as to the legitimacy of the defendant's motives. " *Peterson,* 406 F.3d at 522 (citing *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1192 (8th Cir.1995)). Because I conclude that the record contains sufficient evidence to create a reasonable inference that age was a determinative factor in Defendant's selection of Hart over Johnson-Lanoha for the operations manager position, the Defendant's motion for summary judgment will also be denied as to Johnson-Lanoha's claim. *See Peterson*, 406 F.3d 523 (noting that in that "close case" there was sufficient evidence in the record "to cause a jury to doubt the defendants' reasons for not promoting" plaintiff.) For all these reasons,

IT IS ORDERED:

The Defendant's motion for summary judgment (Filing No. 96) is denied in all respects.

Dated this 18th day of April, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge